JACOB ECKERSON

*v.*

JAMES W. McCULLOH et al.

The evidence in this case clearly established the complainant's right to redeem part of certain land, under an agreement with the defendant to attend a sheriff's sale thereof under foreclosure, and to bid it in for complainant's benefit. Part of the land was conveyed by the sheriff's grantee to a railroad company, by a deed which had not been recorded when the bill was filed.—*Held,* that the seventy-eighth section of the chancery act (*Rev. p. 118*) applied to the case, and that the suit, therefore, was not defective for want of parties.

Bill for relief.  On final hearing on pleadings and proofs.

*Mr. C. H. Voorhis,* for complainant.

*Mr. W. B. Williams,* for defendants.

THE CHANCELLOR.

This suit is brought to redeem a tract of land of about two and one-half acres, at New Durham, in Bergen county. The complainant alleges that the property being advertised for sale under an execution issued in a foreclosure suit upon a mortgage given by him upon it to Michael Fritz, the defendant James W. McCulloh agreed with him that he would attend the sale and buy it in for him, and protect him against liability on his bond for deficiency, and would allow him one year in which to redeem the property by paying to Mr. McCulloh the amount he might be compelled to advance. Mr. McCulloh, on the other hand, says that there never was any agreement for redemption, but that the arrangement was, that he was to buy the property at the sale for a railroad company which he represented, and of which he was vice-president and general manager; and he says he also told the complainant that he believed he could make some arrangement with Fritz, within the limit of the amount which the company would authorize him to give for the property, to protect the complainant against liability to Fritz for deficiency. The railroad company before referred to, which was the Jersey City and Albany Railway Company, was, with the Ontario and Western Railway Company, of which Mr. McCulloh was a purchasing agent, desirous of obtaining part of the property, a strip of thirty-two hundredths of an acre, for their railroad (right of way), and another part, another strip of five hundred and ninety-four thousandths of an acre, adjoining that just mentioned, for the use of the companies for other purposes; and it was out of the application to purchase such land that the proposition of Mr. McCulloh to buy at the sheriff's sale arose.

The cause must be decided on the weight of the testimony. The complainant and his son David swear positively and distinctly that the defendant offered to attend the sheriff's sale and buy in the property, and protect the complainant against liability to Fritz for deficiency. The complainant's son George testifies, amongst other things, that, near the expiration of the year in

Eckerson v. McCulloh.

which the complainant was to redeem, he called on Mr. Mc-Culloh and requested him to give him a statement of what the property had cost him, and Mr. McCulloh made and gave him one in which he claimed to have paid $943.08 for the debt and costs, and interest and sheriff's fees. He also says that Mr. McCulloh claimed interest thereon from March 24th, 1881, the day on which the sheriff's sale took place, and that he inquired of Mr. McCulloh what the railroad company would pay for the part of the land it had taken, and Mr. McCulloh named a sum (he says he thinks it was about $240), and he, the witness, said that that sum was to be allowed his father in the settlement between him and Mr. McCulloh, and the latter said, Yes. Mr. Voorhis, the complainant's solicitor, testifies that shortly before he began this suit, he called on Mr. McCulloh and told him that the year had nearly expired, and said they desired to have the matter closed up, and that Mr. McCulloh said that the complainant had had time within which to redeem the property, but it had expired, and that the property had been sold six months before the time of the conversation, to a railroad company which he named. Mr. Voorhis says he does not know whether it was the West Shore company, or the Ontario and Western. On the other hand, Mr. McCulloh explicitly denies the existence of any agreement to permit the complainant to redeem, and positively asseverates that the agreement was merely that he would buy for the railroad company, and try, in doing so, to protect the complainant against any claim for deficiency ; which he says he has done. Mr. De Clark, who was Mr. McCulloh's assistant as purchasing agent, testifies that he was present at some of the conversations which took place before the sale, and that he never heard any agreement, except that which Mr. McCulloh states. But there are some circumstances in the case which tend to show that the agreement was as stated by the complainant and his son David. In the first place, two days after the property was sold by the sheriff, Mr. McCulloh wrote to the complainant that it had been sold, and that he " had had it *bought in* for $400," and added that that saved sheriff's fees on the difference between that sum and the amount of the decree. He further said that Fritz

could not take judgment for the deficiency, but must sue the complainant on the bond, and requested the latter to let him know at once in case Fritz should do that, and added that then the defence of usury could be set up against Fritz effectually; and he concluded by advising the complainant not to talk of the matter, because, by talking, he might find some of his neighbors making him trouble. According to the rule, ten days, at least, must elapse from the time of sale before confirmation. Within that time it appears that the complainant called on Fritz on the subject of the sale, and Fritz advised him to apply to the court to refuse confirmation, on the ground that the property had not brought the best price that could have been obtained for it, in cash, at the sheriff's sale. But Mr. McCulloh advised him to the contrary, and he took his advice. Fritz's lawyer, it would seem, wrote to the complainant the very next day, after the sheriff's sale, in regard to paying the deficiency, and Mr. McCulloh drafted a reply to the letter for the complainant, which was copied and sent. In it the complainant is made to say to the lawyer that he had already heard that he had sacrificed his, the complainant's, property, and, in order that he might make a larger claim on him, had allowed it to be sold to a man who he (the complainant) knew would have given double the amount for which the lawyer had allowed it to be sold; and the letter threatens to defend against the claim for deficiency, on the ground of usury. On the 7th of April Mr. McCulloh wrote to the complainant that he was getting the Fritz claim into good shape, and requested the complainant not to go near Fritz, and adds:

"If he comes after you, make no offer to do more than pay the face of the mortgage."

It appears from this that up to the 7th of April, two weeks after the sheriff's sale, he was aiding the complainant to bring Fritz to terms; and yet he testifies that before the sheriff's sale he "came to an understanding with Fritz that he would pay him whatever sum there might be over and above the amount which he would have to pay at the foreclosure sale up to $700,"

and he adds that the company would not allow him to go be-
yond that.   He further says that Fritz gave him to understand
that he was satisfied, and would not attempt to buy the property
in at the foreclosure sale.   It does not appear that Fritz was not
satisfied.   Neither he nor his lawyer attended the sheriff's sale,
and it does not appear that any bid was made upon the property
by or for him.   But, further, Mr. McCulloh says that on the
6th of April (the day before he wrote the last-mentioned note to
the complainant, stating that he was getting the Fritz matter
into good shape), he had, as vice-president, drawn a voucher of
the Jersey City and Albany Railway Company for $300, in favor
of Fritz, "for all his interest in the bond and mortgage on the
lands of Jacob Eckerson at New Durham, New Jersey, sold at
foreclosure sale and bought in for that company under arrange-
ment with him."   He says he drew that voucher to assure
Fritz that he would get the money, and he adds that he told
Fritz he could have the money so soon as he produced the bond
and mortgage.   The bond and mortgage were brought to him
by Fritz on the 22d of April, 1881, and on payment of the $300
were assigned to Allan McCulloh, Mr. McCulloh's son, to whom
the property had been conveyed by the sheriff by Mr. McCulloh's
direction.   Again, when near the expiration of the year, George
Eckerson called on Mr. McCulloh for a statement, with a view
to redemption, the latter gave him one by which he claimed to
have paid $943.08, and George Eckerson says he claimed interest
on that amount from the time of the sheriff's sale.   He had only
paid $700, it appears.   Nor, according to the testimony of
George Eckerson, did he deny, but admitted, the existence of
the agreement to redeem, and the complainant's right to redeem,
in pursuance of it.   According to Mr. Voorhis's testimony, he
admitted that the right had existed, but alleged that the time
within which it was to be exercised had expired.   The weight
of the testimony is in favor of the complainant.   But he is not
entitled to redeem the whole of the property.   The evidence
shows that the railroad company was to have the two strips,
together containing nine hundred and fourteen thousandths of
an acre, at the price of $250 an acre.

It appears from the answer that Allan McCulloh executed a deed dated April 28th, 1881, conveying the property bought at the sheriff's sale to the Jersey City and Albany Railway Company, but it has not been recorded. The answer adds that the rights of that company are now vested in the New York, West Shore and Buffalo Railway Company, but how or by what means is not stated, and the answer claims that therefore the bill is defective for want of necessary parties. It appears by the evidence that the deed just mentioned was executed and delivered by Allan McCulloh to the attorney of the company, to be held by him for the company and subject to its directions, and, for aught that appears, he so holds it still.

In view of the provisions of the seventy-eighth section of the chancery act (*Rev. p. 118*), the bill is not defective for want of parties. That section provides that in any suit for the foreclosure of a mortgage upon, or which may relate to real or personal property in this state, all persons claiming an interest in or an encumbrance or lien upon such property by or through any conveyance, mortgage, assignment, lien or any instrument which by any provision of law could be recorded, registered, entered or filed in any public office of this state, and which shall not be so recorded, registered, entered or filed at the time of the filing of the bill in such suit, shall be bound by the proceedings in such suit, so far as the property is concerned, in the same manner as if he had been made a party to and appeared in such suit, and the decree therein made against him as one of the defendants therein ; but that such person, upon causing such conveyance, mortgage, assignment, lien, claim or other instrument to be recorded, registered, entered or filed as provided by law, may cause himself to be made a party to such suit. This case is within the provisions of the section. *Wood* v. *Stover*, *1 Stew. Eq. 248*. There will be a decree establishing the complainant's right to redeem as to all the property (except the two strips, for the price of which, at $250 an acre, he is to have credit), on paying the rest of the $700, with interest from the time when it was paid. And he is entitled to costs.